# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**STEPHEN JAY BRYAN,**

        **Petitioner,**

                                    **Case No. 1:04-CV-775**

**v.**                                 **Hon. Robert J. Jonker**

**MARY BERGHUIS,**

        **Respondent.**

_____/

## REPORT AND RECOMMENDATION

Petitioner, a prisoner formerly incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]

### I.      Background

This case arose from two incidents of sexual assault that occurred at petitioner's residence. The 17-year-old victim in this case resided with her cousin Christine and petitioner (Christine's husband). The first incident occurred on November 17, 1999. The victim testified that she became intoxicated while playing a beer-drinking game with Christine and petitioner. Trial Trans. I at 266-81. Petitioner carried the victim to her room, fondled her and forced her to participate in oral sex. *Id.* The second incident occurred on November 28th, when petitioner kissed the victim's breasts and forced her to rub his penis. *Id.* at 284-97.

---

[1] Michigan Department of Corrections records indicate that petitioner was paroled on September 26, 2006. *See* Offender Tracking Information System ("OTIS") at www.michigan.gov/corrections. "[T]he mere fact that a defendant has been paroled does not render habeas relief unavailable; as long as his liberty is curtailed by the conditions of his parole, [the petitioner] can be granted habeas corpus relief." *Turner v. Bagley*, 401 F.3d 718, 726 (6th Cir. 2005).

Following a jury trial, petitioner was convicted of one count of third-degree criminal sexual conduct ("CSC"), M.C.L. § 750.520d(1)(b), and five counts of fourth-degree CSC, M.C.L. § 750.520(e)(1)(b). Petitioner was sentenced to concurrent prison terms of 71 to 180 months for his conviction of third-degree CSC and 16 to 24 months for each fourth-degree CSC conviction.

Petitioner presented the following issues in his direct appeal to the Michigan Court of Appeals:

I. Did the prosecutor commit reversible error and denied [petitioner] due process when he repeatedly urged the jury to convict [petitioner] because an acquittal would "discredit" the complainant and label her a liar?

II. Did the police and prosecutor destroy [petitioner's] Fifth, Sixth, and Fourteenth Amendment rights when they intentionally suppressed and failed to preserve statements the complaining witness had given them several months before the trial began and instead gave [petitioner's] attorney a written police report that they both knew was inaccurate?

III. Did the court abuse its discretion and deny [petitioner] due process when it recognized that the late discovery of Kim Denoyer's testimony had a devastating impact on [petitioner's] defense and that this raised serious due process concerns and yet the court committed legal error when it refused to declare a mistrial because of a mistaken belief that jeopardy would attach?

IV. Was [Petitioner] denied the effective assistance of counsel when his attorney failed to object to the prosecutor's closing argument or the failure to provide accurate and complete discovery and when counsel himself laid the foundation for admitting Ms. Denoyer's extremely prejudicial testimony?

V. Where the legislature has enacted a specific law for purposes of legislative sentencing guidelines, that felony violations of township laws regarding fires and even willfully allowing a fire to escape from property are public safety offenses, the trial court erred when, over objection, it made its own determination that a misdemeanor conviction for allowing a fire to escape was a crime against property and therefore scorable under prior record variable five?

VI. Where the presentence report noted that a prior conviction was counsel-less and the preparer of the report advised the court that he had not been able to verify a valid waiver of counsel, did the trial court err when it found that

[petitioner] had failed to present prima facie evidence that his conviction violated his constitutional right to counsel and when the court relied on this conviction in scoring the sentencing guidelines?

*See* docket no. 15.

The Michigan Court of Appeals affirmed petitioner's convictions. *People v. Bryan,* No. 227578 (Mich. App. July 16, 2002). Petitioner filed a delayed application for leave to appeal to the Michigan Supreme Court raising these claims and an additional claim that the trial judge was biased, to-wit:

VII.  I expected a fair trial and an [unbiased] judge. I feel the charges brought against me tainted the judge in letting his personal feelings dictate the unfairness of this trial: allowing Ms. Denoyer [to] testify, not granting a mistrial to prepare for a new witness, allowing the trial to continue knowing that the complaining witness [disavowed] her original statement, and at sentencing using the [1992] ticket of allowing a fire to escape, to be scored. Therefore scoring me out of the guidelines.

The Michigan Supreme Court denied the application for leave to appeal and his motion for reconsideration. *People v. Bryan*, No. 122251 (May 8, 2003 and Aug. 29, 2003).

Petitioner, through counsel, raises the following issues in his habeas petition:

I.  Petitioner was denied due process and a fair trial where the prosecutor repeatedly urged the jury to convict petitioner because an acquittal would "discredit" the complainant and cause her public embarrassment throughout the county.

II.  Petitioner was deprived of the effective assistance of counsel where trial counsel failed to object to the prosecutor's closing argument, failed to object to the prosecutor's turning over an inaccurate police report in discovery, and where defense counsel laid the foundation for the admission of harmful testimony and failed to point out the trial judge's mistake of law regarding [petitioner's] motion for a mistrial.

III.  Petitioner was deprived of his Fifth, Sixth, and Fourteenth Amendment rights when the prosecutor intentionally suppressed and failed to preserve statements the complaining witness had given several months before the trial

3

and instead gave defense counsel a written police report that was inaccurate
and misleading.

## II.     Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge
shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant
to the judgment of a State court only on the ground that he is in custody in violation of the
Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in
federal court, however, he must first fairly present the substance of his claims to all available state
courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981);
*Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Petitioner
has met the exhaustion requirement as to all issues, except one claim of ineffective assistance of
counsel.  For the reasons stated below, the court will address the merits of this unexhausted claim
as permitted by 28 U.S.C. § 2254(b)(2).  *See* discussion, *infra*, at ¶ IV.B.4.

Where the state court has adjudicated a claim on its merits, the federal district court's
habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA"), which provides in pertinent part that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant
to the judgment of a State court shall not be granted with respect to any claim that was
adjudicated on the merits in State court proceedings unless the adjudication–

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme Court of the
United States; or

(2) resulted in a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts.   *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*).   An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct.   28 U.S.C. § 2254(e)(1).   A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous.   *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III.   Procedural default

The court typically addresses a petitioner's procedurally defaulted claims first. Here, respondent correctly contends that petitioner's prosecutorial misconduct claim as set forth in his Issue I is procedurally defaulted, because the Michigan Court of Appeals performed only a "plain error" review of the issue.   *See Lundgren v. Mitchell*,  440 F.3d 754, 765 (6th Cir. 2006) ("a state court's plain error analysis does not save a petitioner from procedural default.  Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits") (citations omitted).   However, because an ineffective assistance claim could serve as cause for the procedural default, the court finds itself in the position of reviewing the merits of the prosecutorial misconduct claim to resolve the

5

procedural default issue. *See, e.g., Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (observing that in order to determine whether ineffective assistance of counsel constitutes cause for a procedurally defaulted claim, the court "must, ironically, consider the merits of that claim"). Accordingly, the court will dispense with a lengthy procedural default analysis and simply review the merits of petitioner's claim of prosecutorial misconduct.[2]

### IV.    Petitioner's habeas claims[3]

### A.    Prosecutorial misconduct

"Habeas relief is warranted when the prosecutor's conduct was so egregious so as to render the entire trial fundamentally unfair." *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002) (internal quotation omitted). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)). "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotations omitted). The

---

[2] "[J]udicial economy sometimes dictates reaching the merits if the merits are more easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1161-62 (8th Cir. 1999) (internal citations omitted), *citing Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997). *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits"). *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999) (magistrate judge properly decided the case on the merits where procedural default issue raised more questions than the merits of the case); *Johnson v. Warren*, 344 F.Supp.2d 1081, 1089 (E.D. Mich 2004) (given complexity of determining procedural default, court addressed claims on the merits).

[3] For organizational purposes, the court will review petitioner's ineffective assistance of counsel claims last.

appropriate standard of review for a prosecutorial misconduct claim on a writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*

The court must apply the harmless error standard in determining whether prosecutorial misconduct mandates habeas relief. *Macias v. Makowski*, 291 F.3d 447, 451 (6th Cir. 1992). The Sixth Circuit has adopted a two-step approach for determining whether a prosecutor's remarks violated a criminal defendant's due process rights. *Macias*, 291 F.3d at 452. First, the court must consider whether the prosecutor's conduct and remarks were improper. *Id.* Second, if the remarks were improper, then the court should consider four factors to determine whether "the impropriety was flagrant" and thus violated the defendant's due process rights: (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or to prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong. *Id.* (internal citations and quotations omitted).

Here, petitioner contends that he was denied due process and a fair trial because the prosecutor repeatedly urged the jury to convict him because an acquittal would "discredit" the victim and cause her public embarrassment throughout the county. Petitioner cites the following portion of the prosecutor's closing argument as a basis for his constitutional claim:

> Some on you may remember several years ago the Michael Kennedy-Smith case in Florida or the Mike Tyson case in Indiana, two very wealthy men that were accused of committing sexual acts. You've not heard anything about there being a pot of gold at the end of this case for some civil suit, no indication that there's any kind of economic motive, so what? What does she get from it? Well, you're going to go back into that jury room and you're going to come back with a verdict. You're either going to say that he committed no crime, and if you do that, [the victim] basically leaves this trial discredited, that what she said was not true, or you may come back and may say he's guilty, he did what she said he did, and, you know, she still loses in a way because she walks out of this trial and this whole proceeding

confirmed as a sexual assault victim, and the last that I heard, being a sexual assault victim is not a badge of honor in our society.  There's nothing to gain.

The only thing we can hope from this case is the truth, and so when you go back to that jury room, I would ask you to give thought to some of these ideas that hopefully will add to your discussion and I hope for a verdict based on the truth and I ask you to find him guilty of the six counts we have brought.  Thank you.

Trial Trans. II at 650-51.

The record reflects that petitioner's counsel responded to the prosecutor's argument by pointing out that this suit was essentially a swearing contest between petitioner and the victim, noting that "it's very hard sometimes to tell the truth."  *Id.* at 655-56.  Petitioner's counsel pointed out that the victim had a disciplinary problem, a drinking problem and "is not trustworthy."  Trial Trans. II at 665.  Petitioner's counsel stated that the victim:

has not earned our trust, she has not earned the trustworthiness to come in here, to come into this court -- [petitioner] stand up -- and turn this man into a sexual convict. She has not earned that.  There is reasonable doubt -- there isn't just reasonable doubt, there is unbelievable reasonable doubt in this case and she could tell the story a thousand times, it doesn't make it true, and she could tell her friends and show them things and bring them over, it doesn't make it true, it's just the same lie perpetrated and I'm hoping that she dreamt it and she -- I mean that's really, I guess, my hope, that somebody -- that [the victim] simply dreamt this and she's not this malicious.

Trial Trans. 665-66.

The prosecutor responded with the following rebuttal argument, which petitioner contends was improper:

When I mentioned that one of the things you do is you attract an enormous amount of negative attention to yourself, you've experienced this.  You've watched – and essentially he did it very well in his closing argument – you've watched what happens to you individually when you speak up and it takes a lot of courage to try and do the right thing and for that courage in doing the right thing there is very little to gain and that's what I was trying to point out in my initial closing is what benefit does she get from this at all.

You may come back with a verdict of not-guilty and she is discredited, you come back with a verdict of guilty and she's officially branded a sexual-assault victim, and throughout it all she loses her friends, she loses the -- and the dissension that occurs in her family will probably never be fully healed from this day forward or, actually, from the day she reported it to the police forward. She ends up -- we'll hear about the verdict county-wide and it will all be published and to what end? So when you go back and you evaluate this case, I could ask you -- and what I tried to apply was reasons to each of the steps of what happened and I hope that you do that and I would ask you to be very careful about that seduction, that hook that he's trying to -- to grab you with and have you simply say I'm going to take the easy way out. I ask you to go back and from the facts glean the truth and render a verdict based on the truth in this case.

Trial Trans. II at 669-70.[4]

After reviewing the record, the court concludes that the prosecutor's remarks were not improper. While a prosecutor cannot make statements calculated to incite the passions and prejudices of the jurors, he is granted wide latitude to state his position in closing arguments. *Broom v. Mitchell*, 441 F.3d 392, 412-13 (6th Cir. 2006), *cert. denied* 127 S. Ct. 1376 (2007). Here, both attorneys characterized this case as a credibility contest. The prosecutor's arguments that the victim had "nothing to gain" by being branded a sexual assault victim did not improperly evoke juror sympathy. Rather, the prosecutor was giving the jurors reasons to believe the victim's version of events. The prosecutor's statements are distinguishable from the inflammatory arguments as cited by petitioner in *United States v. Modica*, 663 F.2d 1173, 1180 (2nd Cir. 1981), where the prosecutor stated that, "The proof is very clear. Don't let [the defendant] walk out of this room laughing at you."

The court also disagrees with petitioner's claim, that the prosecution's argument was improper because it assumed matters not in evidence, i.e., that the prosecutor's reference to the

---

[4] Petitioner's brief omits a portion of this two paragraph rebuttal argument. *See* Petitioner's Brief at 7-8. The court has included the entire quoted passage to place the prosecutor's arguments in context.

victim as being either "discredited" by petitioner's acquittal or having the dubious "badge of honor" as a sexual assault victim "confirmed" by petitioner's conviction. *See, e.g.*, *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000) ("[m]isrepresenting facts in evidence can amount to substantial error"). The victim's credibility was a major issue at trial. Both the prosecutor and petitioner's counsel explored the manner in which the victim reported the assaults. The prosecutor presented evidence of the victim's embarrassment at being sexually assaulted by a relative, and her testimony that she did not want her parents present at the preliminary examination because it would really hurt her mother. *Id.* at 342, 349. Such evidence supported the prosecution's argument explaining the victim's reluctance to report the assault to the sheriff's department on November 17th.

Furthermore, the prosecutor's rebuttal arguments were in response to defense counsel's arguments that the victim "is not trustworthy," perpetrated a lie and perhaps "simply dreamt" the sexual assaults. Trial Trans. II at 665-66. Defense counsel's conduct is relevant in determining whether the prosecutor's remarks unfairly prejudiced the defendant. *See United States v. Young*, 470 U.S. 1, 11-13 (1984). Where defense counsel's remarks invite a response, the prosecutor may respond in order to "right the scale." *Id.* The court views the prosecutor's rebuttal as such a response. Accordingly, petitioner's claim for prosecutorial misconduct should be denied.

### B.      Prosecutor's suppression of evidence

Next, petitioner contends that he was deprived of his Fifth, Sixth, and Fourteenth Amendment rights when the prosecutor intentionally suppressed and failed to preserve the victim's comments that a written police report that was inaccurate and misleading.[5]

The record reflects that Deputy Bankey interviewed the victim twice: at her residence on November 30, 1999 and over the telephone after he interviewed petitioner. Trial Trans. II at 469-70, 485. The deputy dictated the 19-page police report based upon his handwritten interview notes. *Id.* at 472-73, 486. He explained that the sheriff's department did not take written statements in criminal sexual conduct cases. *Id.* at 516. The notes were shredded after he prepared the police report. *Id.* at 472-73. At trial, Deputy Bankey testified that the police report contained inaccuracies on some irrelevant matters and noted that it was difficult to interview the victim because she was crying. *Id.* at 485, 504, 513-14.

During the victim's cross-examination, petitioner's counsel elicited four instances in which the victim's testimony differed from the police report: (1) the victim testified that she was using a computer on the internet when petitioner and his wife came home on November 28th (Trial Trans. I at 336-7); (2) the victim testified that the November 28th assault occurred upstairs rather than on the main floor as stated in the police report (Trial Trans. I at 344); (3) the victim denied that she told the police that petitioner's children often slept in the nude (Trial Trans. I at 346); and (4)

---

[5] The parties' use of the term "police report" implies that a police department performed an investigation in this matter. The "police report" at issue was prepared by a Leelanau County Sheriff's Deputy, and is more accurately described as a "sheriff department's report." For purposes clarity, the court will refer to the document to the document as a "police report." The court notes that despite the fact that petitioner repeatedly references the "inaccurate police report," he has failed to provide the court with a copy of this document for review.

the victim testified that she did not "run upstairs" to telephone her sister after the November 28th

assault as stated in the police report, but was already upstairs at that time (Trial Trans. I at 344).

Deputy Bankey testified that prior to the signing of the warrant for petitioner's arrest,

the victim told him and the prosecutor that she disagreed with some of the facts as set forth in the

police report.  Trial Trans. II at 516.  Deputy Bankey made no notes of these discrepancies, which

he described as insignificant or irrelevant to the elements of the crime.  *Id.* at 515.  Deputy Bankey

told the victim that if her answer to a question at trial conflicts with the police report, then she

should give the answer "as you know it."  *Id.* at 514-15.

Petitioner contends that he was prejudiced by the prosecutor's misconduct in

knowingly giving defense counsel a police report containing statements that the victim disavowed

to the officer.  The Michigan Court of Appeals addressed this issue as follows:

> Defendant next argues that the prosecutor violated his ethical duty and denied
> defendant due process when he failed to advise defense counsel that, during a
> warrant review meeting, the victim indicated that the police report was not
> completely accurate with respect to her oral statement. Again, we disagree.
>
> Although there is no general constitutional right to discovery, *People v.
> Elston*, 462 Mich. 751, 765; 614 NW2d 595 (2000), due process requires that the
> prosecutor disclose evidence that is both favorable to the defendant and material to
> the determination of guilt or punishment, *People v. Fink*, 456 Mich. 449, 453-454;
> 574 NW2d 28 (1998). However, evidence is material only if there is a reasonable
> probability that the trial result would have been different had the evidence been
> disclosed. *Id.* Here, in ruling on defendant's motion for a new trial, the trial court
> found that it was not reasonably probable that the trial outcome would have been
> different had the defense been advised of the minor discrepancies between the police
> report and the victim's expected testimony. We agree.
>
> Inasmuch as the discrepancies were disclosed at trial through defense
> counsel's cross-examination of the victim and investigating officer, and defense
> counsel effectively used that evidence at trial to impeach the victim and attempt to
> discredit the police investigation, we agree with the trial court that there is no
> reasonable probability that the result of the trial would have been different had the
> defense been advised of the victim's contradictions sooner. Moreover, although a

> prosecutor has an ethical duty to timely disclose to the defense all evidence and information known which tends to negate the defendant's guilt or mitigate the degree of the offense, MRPC 3.8(d), *People v. Aldrich*, 246 Mich.App 101, 111; 631 NW2d 67 (2001), in this case, defendant was provided the police report containing the inconsistencies for use to impeach the victim at trial, and defendant makes no claim that the victim made any statements to the prosecutor or investigating officer at the warrant review meeting inconsistent with her later trial testimony. Accordingly, we find no error requiring reversal. MCR 2.613(A).

*People v. Bryan*, No. 227578, slip op. at 2.

Petitioner raises two separate issues in this habeas action. First, he claims that the government failed to preserve the victim's corrections to the police report. Second, he claims that the prosecutor engaged in misconduct by knowingly giving defense counsel an inaccurate police report.

### 1. Failure to preserve the victim's corrections

Under *Brady v. Maryland*, 373 U.S. 83 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process were the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "[T]he three components or essential elements of a *Brady* prosecutorial misconduct claim [are as follows]: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Banks v. Dretke*, 540 U.S. 668, 691 (2004), quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). To establish prejudice, petitioner must convince the court that "there is a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Strickler*, 527 U.S. at 289 (internal quotes omitted).

13

However, a police department's failure to preserve potentially useful evidence does not constitute a denial of due process of law unless the criminal defendant could show bad faith on the part of the police.  *See Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1989).   As the court explained in *Youngblood*:

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence.  But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. . . . We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.  *Id.*

Here, it is undisputed that the victim did not provide a written statement to the sheriff's department. While petitioner contends that the government should have kept preserved the victim's "corrections" to the police report, the testimony reflects that there were no such written "corrections" to preserve. In addition, Deputy Bankey testified that the typed police report was "an official police report" that neither he nor the victim could correct.  Trial Trans. II at 487.  Petitioner has not shown that Deputy Bankey acted in bad faith.  As the court observed in  *United States v. Lewis*, 40 F.3d 1325, 1341 (1st Cir. 1994), "[n]o police investigation is entirely perfect, and minor inconsistencies do not support [the defendant's] contention that the [police department] used bad faith and colluded to produce a false and inaccurate police report."  Thus, petitioner was not denied due process.  *Youngblood*, 488 U.S. at 58.

## 2.    *Brady* suppression claim

Petitioner contends that the prosecutor violated *Brady* by withholding its knowledge of the "inaccurate" police report from defense counsel. As the court previously discussed, Deputy

Bankey prepared the police report from his notes.  It is undisputed that petitioner's counsel received a copy of this report.  The issue before the court is whether the prosecutor violated *Brady* by failing to advise petitioner's counsel that the victim "disavowed" some of the statements attributed to her in the 19-page police report.

As an initial matter, the court does not view the four inconsistent statements identified by petitioner as exculpatory evidence.  "*Brady* requires exculpatory evidence to be 'material,' such that there is a 'reasonable probability that, had the evidence been disclosed to the defense,' the outcome would have been different and 'reasonable probability' means a probability 'sufficient to undermine confidence in the outcome.'"  *United States v. Jones*, 399 F.3d 640, 648 (6th Cir. 2005), *quoting Zuern v. Tate*, 336 F.3d 478, 484 (6th Cir. 2003).  Petitioner does not explain how the victim's disagreements with some details of the police report, expressed in a conversation with Deputy Bankey, were transformed into exculpatory evidence subject to *Brady*.  *See, generally, Longworth v. Ozmint*, 377 F.3d 437, 447 (4th Cir. 2004) (there is no "clearly established Federal law, as determined by the Supreme Court of the United States" requiring the state to disclose a deputy's mental impressions as *Brady* material).

Even if these four inconsistent statements were "exculpatory material" suppressed by the government, petitioner must still show that he was prejudiced by the prosecutor's actions.  *See Banks*, 540 U.S. at 691; *Strickler*, 527 U.S. at 281-82.  Petitioner points to two examples of supposed prejudice.  First, petitioner contends that, contrary to the police report, the victim testified that she was not on the computer when petitioner came home on November 28th.  Petitioner contends that this was contrary to counsel's opening statement and

> significant for the defense theory that [the victim] was a sexually active and curious teenager, that Petitioner and [the victim] had previously argued about her visits to

internet sex sites, that she was on the computer when he got home, and that her false accusation was in retaliation to Petitioner's displeasure over her use of the computer.

Petitioner's brief at 24.

Second, petitioner contends that he was prejudiced because

defense counsel was incorrectly informed by the police report that [the victim] said she was assaulted that night downstairs, near [petitioner's wife], while the prosecutor knew [the victim] would testify that it occurred upstairs and said so in the opening statement. [Trial Trans. I at 241.] Defense counsel of course did not learn of this until the middle of the trial and was compelled to clarify this on cross-examination to his disadvantage in the eyes of the jury.

Petitioner's brief at 24.

I disagree with petitioner's contention that these inconsistencies are prejudicial, i.e., that they create "a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Strickler*, 527 U.S. at 289. The prosecution's case was based upon the victim's statement that petitioner sexually assaulted her. Petitioner presents no evidence that the victim ever recanted this claim. On the contrary, the victim testified about the assaults in graphic detail. Trial Trans. I at 252-350; Trial Trans. II at 396-422. Petitioner unwaveringly testified that he did not commit the crime. Trial Trans. II at 579-600. His defense was based upon the theory that the sexual assault never occurred. Under petitioner's theory, the victim filed a false police report filled with lies. Defense counsel successfully impeached the victim's credibility by pointing out portions of the police report that were inconsistent with her testimony at trial. Trial Trans. I at 343-46; Trial Trans. II at 485-505, 514-18. This court agrees with the state trial court and the appellate court that "there is no reasonable probability that the result of the trial would have been different had the defense been advised of the victim's contradictions sooner."

16

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on this claim.

### C.    Ineffective assistance of trial counsel

Petitioner also argues that his trial counsel was constitutionally ineffective because: (1) counsel failed to object to the prosecutor's improper closing argument; (2) counsel failed to object to the prosecutor's misleading him by providing a police report in discovery which the prosecutor knew was inaccurate; (3) counsel opened the door to the testimony of witness Kim Denoyer; and, (4) counsel failed to point out to the judge that double jeopardy does not bar a mistrial where it is requested by the defense.

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690.   "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original).  Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly

deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment.  *Strickland*, 466 U.S. at 689-690.

In evaluating counsel's performance, the court should be mindful that "[t]he Constitution does not guarantee every defendant a successful defense," nor does it guarantee the accused "an excellent lawyer."  *Moran v. Triplett*, No. 96-2174, 1998 WL 382698 at *3, *5 (6th Cir. 1998).  Rather, "[t]he Sixth Amendment entitles criminal defendants to effective assistance of counsel which means the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *United States v. Boone*,  437 F.3d 829, 839 (8th Cir.) (internal quotes omitted), *cert. denied sub nom Washington v. United States*, 127 S. Ct. 172 (2006).

### 1.    Counsel's failure to object to prosecutor's closing argument

### 2.    Counsel's failure to object to the "inaccurate police report"

In his first two ineffective assistance claims, petitioner contends that counsel failed to object to the prosecutor's alleged misconduct during closing argument and with respect to the inaccurate police report.

The Michigan Court of Appeals addressed these issues as follows:

> Next, defendant argues that he was denied the effective assistance of counsel as a result of several errors by his trial counsel. We again disagree. A defendant alleging ineffective assistance of counsel must establish that counsel's performance fell below an objective level of reasonableness and that a reasonable probability exists that but for counsel's errors the outcome of the proceedings would have been different. *People v. Sabin (On Second Remand)*, 242 Mich.App 656, 659; 620 NW2d 19 (2000).

> In challenging counsel's performance at trial, defendant first argues that counsel was ineffective in failing to object to the lack of complete and accurate discovery, or to the prosecutor's closing argument. However, as discussed above, the prosecutor's argument was proper. Accordingly, counsel was not ineffective in failing to object to the argument. *See People v. Snider*, 239 Mich.App 393, 425; 608 NW2d 502 (2000) (trial counsel is not required to raise meritless objections, and

18

failure to do so does not constitute ineffective assistance of counsel). Further, because defense counsel effectively used the discrepancies between the police report of the victim's statement and the victim's trial testimony to impeach the victim and discredit the police investigation, defendant cannot show that counsel's failure to raise an objection to the alleged discovery violation affected the outcome of the trial.

*People v. Bryan*, No. 227578, slip op. at 3-4.

As previously discussed, the prosecutor did not engage in this alleged misconduct. Petitioner's counsel had no basis to object to the prosecutor's actions. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999). *See Lilly v. Gillmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court").

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on this claim.

### 3. Counsel's "opening the door" to witness Kim Denoyer

Petitioner contends that trial counsel was ineffective for opening the door to the testimony of a witness who was not identified prior to trial. On direct examination, the prosecutor established that the victim reported aspects of the sexual assault to her cousin Christine (petitioner's wife), her father and her sister. Trial Trans. I at 309. The prosecutor then asked the victim if she reported this "to anyone outside of your home other than Christine?" *Id.* In response, the victim testified as follows:

A.    Well, yes and no, because the day after it happened we had a district basketball game -- the first incident -- and one of my friends had come with

19

> me because I was giving her a ride into Suttons Bay to pick up her car and
> she had seen all the beer cans and she could tell that I had a hangover, so in
> a way I told her what happened, but yet in a way she didn't believe me, but
> then she eventually did.

Trial Trans. I at 309-10.   Petitioner's counsel objected and the court redirected the line of

questioning to the victim's reporting of this matter to the police.   *Id.* at 310.

On cross-examination, defense counsel questioned the victim about her friend, who

was later identified as Kim Denoyer.  *Id.* at 312-15.  On re-direct examination, the victim testified

that she did not tell any other friends at school about the assault because she did not want people to

know about it and it was embarrassing.  *Id.* at 347.  She did not tell her parents the details of the

incident because it would really hurt her mother.  *Id.* at 349.

After the jury was excused, the trial judge addressed the issue of this newly

discovered witness.  *Id.* at 351-52.  While the victim did not make detailed statements of the assault

to Ms. Denoyer, the judge observed that "the name had not been previously disclosed and I wish to

meet with Counsel to see whether there was going to be any further effort to have her subpoenaed

or to have her here."  *Id.* at 352.  Petitioner's counsel expressed a desire "to do my job and interview

her."  *Id.*  The prosecutor offered to have Deputy Bankey locate the witness before the next day of

trial.  *Id.*  The judge agreed to have the attorneys subpoena her, interview her prior to starting the

next day of trial, to place a brief examination of her on the record and then determine whether to

allow her testimony at trial. *Id.* at 352-56.

Ultimately, Ms. Denoyer testified on the second day of trial.  Ms. Denoyer testified

that she knew something was wrong with victim, that she was sick or had a hangover.  Trial Trans.

II at 425.  They were in the car going to the victim's cousin's residence when the victim:

> "[S]tarted to tell me that the night before she was drinking with Christine and [petitioner] and she had a hangover from the night before, and she had told me that after she was done drinking and getting ready to go to bed, he carried her upstairs and set her down on top of the stairs and when she was walking into her room, he came in with her and unzipped his pants and had her suck his penis.

*Id.* Ms. Denoyer testified that the victim was "really scared" and "kept telling me or asking me, 'what am I supposed to do, I don't know what to do,' so I didn't know what to tell her." *Id.* at 426. When they arrived at petitioner's residence, Ms. Denoyer saw "a bunch of beer cans all over the table." *Id.* Then, the victim led Ms. Denoyer through the events of the previous night, showing Ms. Denoyer where petitioner picked her up, set her down, and "where it happened." *Id.* Ms. Denoyer told no one about the incident but her mother. *Id.* Some time later, Ms. Denoyer confronted the victim at school, and the victim said "her dad was talking to the cops about it and they were handling it that way." *Id.* at 428. In summary, Ms. Denoyer's testimony corroborated portions of the victim's testimony and rebutted petitioner's claim that the sexual assault was a recent fabrication.

On appeal, petitioner claimed that his counsel was ineffective because he laid the foundation for Ms. Denoyer's testimony. The Michigan Court of Appeals addressed the alleged ineffective assistance of counsel claim as follows:

> Defendant further argues that counsel was ineffective because it was he who laid the foundation for the testimony of the late-endorsed corroborating witness. Thus, defendant asserts, the witness would not have testified but for counsel's actions. However, as noted by the trial court in denying defendant's motion for a new trial on this same ground, once the victim disclosed (during direct examination by the prosecutor) that she had confided the abuse to a friend, it is unreasonable to conclude that the witness' identity and what she knew would not have been discovered before the end of the trial even if defense counsel had taken different action. Accordingly, there is no basis to conclude that, but for counsel's further inquiry into the matter, the outcome of the trial would have been different.

*People v. Bryan*, No. 227578, slip op. at 4.

The court agrees with the appellate court's denial of the ineffective assistance claim with respect to Ms. Denoyer.  Petitioner's position on this issue is untenable.  Once petitioner's counsel discovered the existence of this new witness, counsel could not stick his head in the sand and ignore the situation.  Defense counsel's trial strategy was based upon petitioner's anticipated, and actual, testimony that the sexual assault never happened.  The appearance of a new witness changed the dynamics of the trial, because now a third-party could potentially corroborate some of the victim's statements and potentially rebut petitioner's theory that the victim fabricated the November 17th incident.  Counsel cannot be faulted for his  attempts to evaluate this new witness. On the contrary, it would have been unreasonable for counsel not to have inquired about the victim's statements made to Ms. Denoyer and to interview this new witness.  Counsel has a duty to investigate all witnesses who may have information concerning his client's guilt or innocence.  *See Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on this claim.

    **4.    Counsel's failure to advise the trial judge that double jeopardy does not bar a mistrial where it is requested by the defense.**

This claim is unexhausted because petitioner failed to raise it in his direct appeal to the Michigan Court of Appeals.  Petitioner may still exhaust this claim by filing a motion for relief from judgment pursuant to MCR § 6.500 *et seq*.  As a general rule, a habeas petition containing unexhausted claims should be dismissed without prejudice.  *See Rose v. Lundy*,  455 U.S. 509, 518-20 (1982). However, under 28 U.S.C. § 2254(b)(2), federal courts have the discretion to deny habeas

relief on the merits regardless of whether the petitioner has exhausted his state remedies. *See Jones v. Jones*, 163 F.3d 285, 299 (6th Cir. 1998). *See, e.g.*, *Farley v. Lafler*, 193 Fed.Appx. 543, 549 (6th Cir. 2006) ("[the]AEDPA clearly provides that the district court could hear the unexhausted jury instruction claim and deny it on its merits to avoid further litigation for the sake of efficiency"). In this case, the court will exercise its discretion petitioner's unexhausted claim pursuant to § 2254(b)(2).

The trial judge expressed his concern with the double jeopardy issue as follows:

> [O]ne of the concerns the Court has is, as we are sitting here with an individual charged with, among other offenses, a capital offense where unbeknownst to either the People, who had a very thorough investigation, or the Defense, who could have asked her on cross-examination if she talked about it with anyone else at the prelim, an extremely damaging witness [Ms. Denoyer] with highly relevant, admissible testimony.

> The question is how do we present that in this case, do we present it in this case. I don't know that this case could be mistried and retried. We've sworn a jury and jeopardy arguably attached. Those are some things I think that need to be considered here, because I'll be candid with both of you, I thought at the end of jury selection the odds of a conviction here were less than fifty percent. I would now put them at about eighty percent.

Trial Trans. II at 375-76.

Now, petitioner faults his attorney for failing to raise the "basic principle of double jeopardy law" because "the trial court was wrong" when it stated "that if a mistrial were declared, double jeopardy would bar retrial." Petitioner's brief at 19-20. Specifically, that "[w]hen a defendant moves for or consents to a mistrial in circumstances not due to prosecutorial misconduct, double jeopardy does not bar retrial." Petitioner's brief at 20. The gist of petitioner's argument is that counsel was deficient for failing to correct the court on a "basic principle of double jeopardy

law," and this resulted in the denial of his motion for mistrial. Petitioner's contention is without merit because he was not prejudiced by counsel's actions. *See Strickland,* 466 U.S. at 687.

First, the trial judge did not state that "if a mistrial were declared, double jeopardy would bar retrial." Rather, the trial judge stated "I don't know that this case could be mistried and retried. We've sworn a jury and jeopardy arguably attached." Trial Trans. II at 376. Contrary to petitioner's contention, the trial judge's position regarding the effect of double jeopardy was not "wrong." Based on the judge's comments, there was little room for defense counsel to argue with the trial judge on whether double jeopardy could apply in this case.

Second, although petitioner did not raise the ineffective assistance claim on appeal, he did appeal the trial judge's denial of the motion for a mistrial. The appellate court's opinion, which affirmed the trial judge's decision, is instructive:

> Defendant next argues that the trial court abused its discretion and denied defendant due process by denying a defense motion for a mistrial premised on the trial court's decision to permit a late-endorsed corroborating witness to testify that the victim had told her of the sexual abuse before a defense-alleged motive to fabricate existed. Again, we disagree.
>
> Defendant argues that in denying the motion the trial court erred in focusing on whether a mistrial was manifestly necessary, a standard that defendant asserts need not have been met to preclude double jeopardy from barring retrial because defendant requested the mistrial. However, while consent by a defendant to declaration of a mistrial precludes application of the bar of double jeopardy, *People v. Tracey,* 221 Mich.App 321, 328; 561 NW2d 133 (1997), a defendant's consent does not require that a trial court grant a mistrial upon demand. Rather, it remains within the trial court's discretion to grant or deny a defendant's motion for mistrial, *People v. Ortiz-Kehoe,* 237 Mich.App 508, 512-513; 603 NW2d 802 (1999), and a trial court's refusal to grant a mistrial will be an abuse of discretion only where a trial irregularity would otherwise deny the defendant a fair trial. *Id.* at 513-514. Moreover, what a trial court concludes to be consent during a trial may turn out not to be consent on appeal, *see People v. McGee,* 247 Mich.App 325, 332-333; 636 NW2d 531 (2001), even where mistrial is premised upon a defense motion, *see People v. Hicks,* 447 Mich. 819, 831-834; 528 NW2d 136 (1994). Accordingly, the trial court's concern whether a mistrial was manifestly necessary was justified.

Moreover, the trial court did not err by concluding that, because no prosecutorial or police misconduct was involved, allowing the late discovered witness with probative evidence to testify would not be unfair. The trial court correctly concluded that although the corroborating witness' testimony was damaging, the defense theory that the alleged crimes were a fabrication of a troubled teen remained intact. Moreover, although defense counsel implied that had he known of the late-endorsed witness' testimony, the defense theory might have been changed to consent, counsel conceded that the defense theory was determined by what defendant told him and, here, defendant testified that he did not sexually abuse the victim. In any event, there is no record evidence that defendant ever desired to assert consent as a defense. Thus, we find the trial court correctly concluded that although damaging to defendant, in the absence of police or prosecutorial misconduct, it was not unfair to permit a "material untainted and thoroughly reliable witness" to testify. *See People v. Mills*, 450 Mich. 61, 75; 537 NW2d 909 (1995) ("unfair prejudice" does not mean merely "damaging."). The trial court therefore did not abuse its discretion by denying defendant's motion for mistrial. *Ortiz-Kehoe*, *supra* at 512-513.

*People v. Bryan*, No. 227578, slip op. at 3.

As the Michigan Court of Appeals pointed out, the decision to grant a mistrial is a matter within the trial court's discretion; petitioner did not have the right to a "mistrial upon demand."  Here, the appellate court found that the trial judge did not abuse his discretion in denying the motion.  Even if petitioner's attorney had contested the characterization of the double jeopardy issue,  the court did not rest its decision solely on the "arguable" attachment of jeopardy.  The court also considered other matters and observed: that petitioner's defense of recent fabrication remained intact;  that Ms. Denoyer could be offered to rebut petitioner's theory ("when you look at the core of what the Defense theory is, that this didn't happen and it's a fabrication, she could have six people like this and that shouldn't change the Defense"); and, that a mistrial was not a "manifest necessity" because allowing Ms. Denoyer to testify was not improper bolstering of the victim's testimony. Trial Trans. II at 391-92.  Under these circumstances, counsel's failure to contest the trial judge's assertion that double jeopardy arguably attached was not an error so serious as to deprive

petitioner of a fair trial.  *See Strickland,* 466 U.S. at 687.   Accordingly, petitioner is not entitled to

habeas relief on this claim.

**V.      Recommendation**

I respectfully recommend that petitioner's habeas petition be **DENIED**.  Rule 8,

Rules Governing § 2254 Cases in the United States District Courts.


Dated:  December 20, 2007                              /s/ Hugh W. Brenneman, Jr.
                                                      HUGH W. BRENNEMAN, JR.
                                                      United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with
the Clerk of the Court within ten (10) days after service of the report.  All objections and responses
to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written
objections within the specified time waives the right to appeal the District Court's order.  *Thomas
v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).